## Dwyer, Appellant, *v.* Port Allegheny Borough.

*Negligence—Boroughs—Slippery sidewalk—Contributory negligence—Evidence—Nonsuit.*

In an action against a borough to recover damages for personal injuries it appeared that the plaintiff while walking upon a slippery sidewalk in a borough fell and sustained the injuries of which he complained. The evidence showed that the accident occurred at nighttime and that the sidewalk through its whole length was in a slippery and dangerous condition for pedestrians. Of this fact the plaintiff was ignorant, as he had not previously passed along it during the winter. He, however, did know that the street itself furnished a safe way, and that the pavement on the other side was safe, and was the usual thoroughfare. The plaintiff's testimony indicated that he realized before it was too late to retrace his steps or change his course, that danger confronted him, and that to advance further was perilous. *Held,* that a nonsuit was properly entered.

Argued April 30, 1906.   Appeal, No. 77, Jan. T., 1906, by plaintiff, from order of C. P. McKean Co., Oct. T., 1904, No. 96, refusing to take off nonsuit in case of Michael J. Dwyer v. Port Allegheny Borough.   Before BROWN, MESTRE-ZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before BOUTON, P. J.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*John G. Johnson*, with him *Sheridan Gorton* and *Thomas F. Richmond*, for appellant.

*F. D. Gallup*, of *Gallup & Bouton*, with him *D. S. Helmer*, borough solicitor, *Fred S. Lewis* and *S. W. Smith*, for appellee.

OPINION BY MR. JUSTICE STEWART, June 27, 1906 :

The case as exhibited on behalf of the plaintiff showed that the injury for which compensation is demanded was sustained under the following circumstances :

In the late afternoon or early evening of February 17, 1904, while walking in the borough of Port Allegheny, the plaintiff slipped and fell in consequence of the icy condition of the pavement, his fall resulting in a broken limb.   At the point where the accident happened, and for quite a distance on either side, the pavement, in consequence of an accumulation of ice thereon, was, and had been for some time, in a condition that made it hazardous for pedestrians to attempt.   The plaintiff, however, had not previously during the winter passed along it, and was ignorant of its condition.   It was easy for one passing along that street to avoid this particular place of danger. The street itself furnished a safe way, and was accessible from the pavement, while on the other side of the street there was a wide, much-traveled and reasonably safe pavement, also easily accessible.   Plaintiff was aware of this fact, since he had used the pavement on the other side during the afternoon, and had crossed the street several times.   The pavement on the side

where the plaintiff fell was not used to the extent that the pavement on the other side was ; it was along vacant lots and lawns, while that on the opposite side was the business thoroughfare.

The court below being of opinion that the law charged plaintiff with negligence upon his own showing of the circumstances, directed a nonsuit. We have nothing in the case to consider but this action of the court. This makes necessary a somewhat more detailed statement of the evidence, in connection with the inquiry, which obviously must determine the correctness of the court's action.

The plaintiff entered upon the dangerous piece of pavement when he turned from Maple street upon Main. From that point to where he fell, a distance of eight rods, the pavement, without break, was dangerous to pedestrians. A snow plow had been used there some time before, with the result that bordering a narrow path, itself covered with ice, there were ridges of snow now turned to ice, with sides inclining the entire length. The plaintiff's own testimony is conclusive of the fact that the pavement was in a dangerous condition throughout its entire length traversed by him, worse in some places than others, but practically the same from the midway point in the Dalrymple lot to the place where he fell. The witness Cook, who was more particularly inquired of with respect to this matter, says, speaking of the character of the ridges, that the pavement was about in the same condition all the way through. The danger was not concealed by the snow, but was apparent to anyone exercising ordinary observation. The plaintiff says : "When I first started on the walk I didn't know the condition of it; if I did, I would be thought a fool if I hadn't taken the other ; it was dark; I started to go home ; I expected this walk like the others to get better after awhile ; if I hadn't thought the walk would get better up aways, I would have turned back any time." It is not apparent just what the witness meant by saying that he didn't know the condition of the walk when he first started on it ; whether he meant the instant he entered upon it, or after he had followed it some distance is not clear; but it is not material, since the language subsequently used admits of no other explanation than that he did realize before it was too late to retrace his

steps or change his course, that danger confronted him, and to advance further was perilous. That it was dusk, and the danger therefore not apparent, is his excuse for entering upon the street at all; but despite this difficulty he somehow or other soon became aware of the actual situation, because he says he would have turned back but for the expectation that the condition of the pavement would improve as he advanced. Instead of improving it grew worse, according to his own testimony, and yet he persisted. Upon his own admission he voluntarily attempted a known dangerous way which could, without inconvenience to himself, have been. avoided as he admitted. This admission was not incautious or accidental; it not only accords with the other testimony of the plaintiff, but was subsequently repeated by him. It was necessarily fatal to his right to recover, since it discloses a clear case of contributory negligence on his part. Citation of authorities in support of the principle governing the case would be superfluous. The motion for a compulsory nonsuit necessarily prevailed.

Judgment affirmed.