## Petrie *v.* E. A. Myers Co., Appellant.

*Negligence—Automobiles—Pedestrian on highway — Contributory negligence—Case for jury.*

1. Where a pedestrian leading a cow by a rope, walks on the extreme right hand of the paved portion of a country road, with an area of muddy ground lying to the right of the traveled way, he may assume, as his rights are equal to those of the user of a motor vehicle, that he will not be struck from the rear, by any such vehicle.

2. If the evidence in such case shows that the pedestrian's failure to look behind, may have been due to his mistaking the horn of a truck which struck him from behind for one which was ahead of him, and it appears that both trucks were owned by the same party, the question of the negligence of the owner of the trucks, and the pedestrian's contributory negligence, is for the jury, in an action to recover damages for the latter's death.

Argued October 15, 1920. Appeal, No. 153, Oct. T., 1920, by defendant, from judgment of C. P. Allegheny Co., July T., 1918, No. 347, on verdict for plaintiff, in case of Anna Petrie v. E. A. Myers Co. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before REID, J.

At the trial the jury returned a verdict for plaintiff for $5,000. On a rule for a new trial and motion for judg-

ment for defendant n. o. v., REID, J., refused both, in the following opinion:

At the time of the occurrence of the accident, decedent, who, among other activities, was a dealer in cattle, was leading a cow, by a rope, down Obie avenue in Chartiers Township, Allegheny County.

Defendant at the time was engaged in hauling coal from a mine in that vicinity, using for the purpose two automobile trucks. One of these, in charge of an employee of defendant, was descending the steep grade of Obie avenue, heavily laden. The driver of this truck, who was keeping to the right of the road, saw decedent ahead of him walking along the extreme right side of the roadway, also bound down the hill and having his back to the descending car. Decedent was within twelve inches of the outer edge of the paved roadway, the cow he was leading by a short rope, was moving on the unpaved, wet, and muddy portion of the highway close to decedent's right. Although defendant's driver sounded his horn and, as he contends, also shouted, decedent kept to the edge of the paved road and did not look around.

As the downbound truck was approaching decedent, the defendant's empty upbound truck, enroute to the mine, was in sight of both the decedent and the driver of the downbound truck. The driver of the upbound truck (we are justified in assuming, though he could not be found to testify) also had in view the man, cow, and downbound truck.

Although this situation was thus observable to both drivers, they nevertheless continued in motion, and their trucks passed the spot then occupied by decedent, at the same moment, thereby occupying the entire paved portion of the roadway, and the front right-hand wheel of the downbound truck struck him and inflicted injuries from which he died.

Defendant's downbound truck, although the brakes were applied and the movement retarded somewhat, be-

ginning one hundred yards away, continued to advance all the time, anticipating that decedent would step out into the mud and give the whole paved roadway to the trucks. There was no attempt to stop the downbound car until within a few feet of decedent, and then it could not be stopped.

The evidence of Lotes, the driver of the loaded truck, indicates that, as he saw the upbound car advancing at a rate not to exceed eight miles an hour and his car was moving at from six to eight miles an hour, with the emergency brake on, he could have swung to the left across the path of the upbound car, had he chosen to do so and thus avoided striking the man. But, as already stated, he kept blowing the klaxon, shouting, and expecting to have the way clear, and kept going until, when the trucks passed, there was but one inch between them, and the accident happened.

The chief line of defense was the contributory negligence of decedent.

The reasons assigned for a new trial are (1) the verdict was against the law; (2) against the evidence; (3) error of the court in refusing defendant's first point; (4) in refusing defendant's second point; (5) in not unqualifiedly affirming defendant's third point; and (6) in refusing defendant's fourth point.

If the verdict was against the law, it is because the defendant was entitled to binding instructions. As to the verdict's being against either the evidence or the weight of the evidence, we are convinced that it was neither, but was fully warranted by the facts proven.

Being of opinion that the whole case was for the jury, we refused defendant's first point (covered by the third of foregoing reasons). This point was for binding instructions. Evidence warranting submission to the jury was adduced, and therefore the point was necessarily refused.

The fourth reason refers to the refusal of defendant's second point, which was as follows: "Fred Petrie......

having elected to traverse......a public highway longitudingly is bound to be most vigilant and to exercise a high degree of care."

This was refused as requiring a greater degree of care than the law requires in the user of a highway, especially in country districts, as a place for traveling on foot. It seems to us that, as decedent was lawfully upon the highway, using the extreme right-hand paved roadway, he could safely assume, as his rights were equal with those of the users of motor or horse-driven vehicles, that he would not be struck from the rear by any such vehicles.

The fifth reason, which complains that the court did not affirm without qualification the defendant's third point, must also be overruled. This qualification was justified. Its absolute affirmance would have assented to the proposition that, because warning was given, decedent was necessarily guilty of contributory negligence, although he may not have heard it. The defendant's driver, Lotes, says that decedent could easily take the sound of the downbound truck's horn for that of the upbound truck which was ahead of him, and that in all probability explains his failure to look around. Whether he heard the warning from behind, was clearly for the jury.

The sixth reason for a new trial, based upon the court's refusal to affirm defendant's fourth point, cannot be sustained. That point is as follows: "If the jury believe that there was sufficient space on Obie avenue, to the right of the road, to which decedent......could have proceeded upon the approach of defendant's downgoing truck, and did not thus proceed, he is guilty of contributory negligence, and there can be no recovery......"

It is clear that this point could not have been affirmed. It is not predicated on the giving of any warning of the approach of the downbound truck. It presents the bald proposition that decedent was guilty of using the paved edge of the roadway because there happened to be a considerable space of muddy and soggy ground to the

right of the road, on which the cow was walking. It also omits the consideration, which was for the jury, whether, given a firm and usable paved way, a foot passenger must take to a less convenient and disagreeable part of the highway because some vehicle may wish to use the beaten track. We believe that the affirmance of the point would have been error.

We must therefore refuse the motion for a new trial.

The consideration of the foregoing proposition has, in effect, disposed of the motion for judgment n. o. v.

It is clear that, if there were any questions for the determination of a jury, we could not have affirmed defendant's point for binding instructions. That there were such questions the negligence or nonnegligence of the defendant's employees, the contributory negligence of the deceased, and the determination of the facts presented by the testimony on those matters on the part of both the plaintiff and the defendant, the foregoing discussion will show were presented in this case. We could affirm defendant's first point only by ruling, as a matter of law, that the decedent's conduct presented a clear case of contributory negligence. That it did not do so, but was for the jury, we have already indicated.

In deciding both motions, we have considered the authorities cited in defendant's brief. We believe they do not rule this case. Virgilio v. Walker et al., 254 Pa. 241, is clearly to be distinguished. There, decedent had a wide, improved city street with excellent sidewalks on both sides. Here, decedent had a country brick road, with an area of muddy ground lying to the right of the traveled way.

In the case of Smith v. Transit Co., 252 Pa. 435, the deceased "improvidently exposed himself to a known danger," in attempting to pass on a bicycle between a wagon on one side and an unusually wide traction car on the other. And, in Falco v. Street Ry. Co., 68 Pitts. L. J. 444, the injured person with an available clear, improved highway twenty feet wide on one side, neverthe-

1920.]    Opinion of Court below—Opinion of the Court.

less chose to walk between the tracks of the street railway heedless of a car coming behind him. In that case, also, there was the factor, absent here, of the railway company's having a right on the highway superior to that of the ordinary user of the road.

Defendant appealed.

*Error assigned,* among others, was order refusing judgment n. o. v., quoting it.

*John H. Lauer,* with him *Morris, Walker & Boyle,* for appellant.

*George C. Bradshaw,* of *Thomson & Bradshaw,* for appellee, was not heard.

PER CURIAM, December 31, 1920:

The facts in this case are stated in concise detail in the opinion of the court below refusing a new trial and defendant's motion for judgment. What it there said, in disposing of the two motions, is here approved, and the judgment affirmed.